UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>-against-<br><br>JOSE ESCOBAR OREJUELA,<br><br>Defendant. | **MEMORANDUM AND ORDER**<br>Case No. 04-CR-515-5 (FB) |

*Appearances:*
*For the United States:*
MATTHEW SKURNIK
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 1120

*For the Defendant:*
JOSE ESCOBAR OREJUELA, *pro se*
FCI Edgefield
Post Office Box 725
Edgefield, South Carolina 29824

**BLOCK, Senior District Judge:**

Proceeding *pro se*, José Escobar Orejuela ("Escobar" or "petitioner") seeks an extension of time to appeal my denial of his second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). For the following reasons, his request is GRANTED and his appeal, filed seven days after his then undecided motion for an extension of time, is deemed timely.

I

Escobar filed the subject motion for compassionate release on January 8, 2024, which I denied on April 17, 2024. ECF No. 669. He did not receive the decision because the Clerk's office had sent it to an incorrect register number. *See* ECF Nos. 674–75. On June 5, 2024, the mail was returned as "not deliverable."

1

ECF No. 672. On August 19, 2021, and again on March 8, 2024, the Court had also received returned mail it sent to Escobar because it was addressed to the wrong register number. ECF Nos. 657, 667. Clerical error caused these mistakes since Escobar has consistently informed the Court of his correct register number as early as February 13, 2009, and the Court had previously sent mail to the correct register number. *See, e.g.*, ECF Nos. 506, 569, 580, 590, 652, 663, 667.

After Escobar sought a status update from the Clerk's office by letter dated July 8, 2024, the Court's decision was mailed to his correct register number, and he received it on July 26, 2024. ECF No. 675. Just three days later, on July 29, 2024, Escobar filed the subject motion for an extension of time to appeal, *id.*, and subsequently filed a notice of appeal and brief on the merits on August 5, 2024. ECF No. 673. The government has not submitted any opposition to his motion.

## II

Preliminarily, all federal courts have the duty to address their subject matter jurisdiction *sua sponte* "irrespective of whether either party raises the issue." *United States v. Frias*, 521 F.3d 229, 232 (2d Cir. 2008) (cleaned up) (quoting *Henrietta D. v. Giuliani*, 246 F.3d 176, 179 (2d Cir. 2001)); *see also Ala. Legis. Black Caucus v. Alabama*, 575 U.S. 254, 270 (2015); *Marquez v. Silver*, 96 F.4th 579, 582 (2d Cir. 2024).

"[U]nder Rule 4(b), a defendant seeking to appeal from an order in a criminal case must file a notice of appeal within fourteen days of the entry of the order, *see* Fed. R. App. P. 4(b)(1)(A)(i), unless the district court grants a thirty-day extension for excusable neglect or good cause, *see* Fed. R. App. P. 4(b)(4)." *United States v. Martinez*, No. 20-CR-2981, 2023 WL 3243480, at *2 (2d Cir. May 4, 2023) (summary order).

Escobar had good cause for missing the initial fourteen-day deadline; he did not receive the Court's decision because the Court had Escobar's incorrect register number, through no fault of his own. However, the thirty-day extension authorized by Rule 4(b)(4) is of no avail in this case since it only "extend[s] the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this Rule 4(b)." Fed. R. App. P. 4(b)(4).

Nonetheless, Escobar seeks to invoke equitable tolling lest his criminal appellate rights be rendered nugatory. The governing case law has an attenuated history which continues to challenge the district courts and is sorely in need of focused clarification and application.

In the Second Circuit, it all began with its decision in *United States v. Frias*, 521 F.3d 229 (2d Cir. 2008). There, the court held that, unlike the provisions under Rule 4(a) governing the time to file a notice of appeal in civil matters, "the time limits of Rule 4(b) are not jurisdictional." *Id.* at 231–33 ("In *Bowles*, by contrast,

3

the Court held that Federal Rule of Appellate Procedure 4(a) [specifically, 4(a)(1) and 4(a)(6)], which governs the time to appeal in a civil case, is jurisdictional." (citing *Bowles v. Russel*, 551 U.S. 205, 213–14 (2007))). Its rationale was predicated on the dichotomy between those rules "derived from a federal statute," such as civil Rules 4(a)(1) and 4(a)(6), and one such as criminal Rule 4(b), which was not. *Id.* at 233. It explained that "the time to file a notice of appeal in both civil *and* criminal cases was governed by a single statute until 1948, when Congress amended it to cover only civil actions." *Id*. For criminal cases, the time limit was then promulgated in a rule of criminal procedure, which subsequently became Rule 4(b). *Id*. "The time to appeal a criminal judgment, therefore, [was] set forth only in a court-prescribed rule of appellate procedure[,]" unlike the parts of civil Rule 4(a) "grounded" in a federal statute. *Id.* Therefore, Rule 4(b) "[did] not withdraw federal jurisdiction over criminal appeals." *Id*.

      Rule 4(b) has multiple subsections, including the "time for filing a notice of appeal" in 4(b)(1) and the standard governing a "motion for extension of time" to file the notice for "excusable neglect or good cause" in 4(b)(4). When *Frias* refers to Rule 4(b), it is in effect referring to its time limit under 4(b)(1) for filing the notice of appeal. *Id.* at 231 ("We conclude that the time limits of Rule 4(b) are not jurisdictional . . . .").

Although Rule 4(b) was not jurisdictional, the court further held in *Frias* that the rule "does not authorize courts to disregard it when it is raised." *Id.* at 234. Therefore, "[w]hen the government properly objects to the untimeliness of a defendant's criminal appeal, Rule 4(b) is mandatory and inflexible." *Id*. Its holding was in accordance with general Supreme Court precedent at that time which did not distinguish between those claim-processing rules that were subject to equitable exception and those that were not. *See Bowles*, 551 U.S. at 209–214; *Eberhart v. United States*, 546 U.S. 12, 17–18 (2005); *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004).

Since the government had not objected to the timeliness of Frias' appeal, the court held that it had forfeited its right to object and decided the merits of the appeal. Presumably, if there had been an objection, equitable tolling would not have been in play notwithstanding that Rule 4(b) was not a jurisdictional bar.

The circuit court's *Frias* decision is somewhat paradoxical. Read literally, even though Rule 4(b) is not jurisdictional, equitable tolling could never be invoked when the government objects. Pragmatically, it would not matter, therefore, whether 4(b) is jurisdictional. In either event, the result would be the same. In my view, it is conceptually a non sequitur.

And equally puzzling is *Frias*' footnote 5, which suggests that the government's waiver might be irrelevant since the court has left the door open to

5

decide whether it "may, in its discretion, dismiss *sua sponte* an untimely appeal even when the government fails to invoke Rule 4(b)." *Frias*, 521 F.3d at 234 n.5.

Following *Frias*, the Supreme Court has muddied the waters and has left district court judges with a host of imponderables. For example, it embraced a rebuttable presumption in favor of equitable tolling where the one-year statute of limitations for petitions for federal habeas relief was implicated because "equitable principles have traditionally governed the substantive law of habeas corpus." *Holland v. Florida*, 560 U.S. 631, 646 (2010) (internal quotations omitted). Its rationale was that the non-jurisdictional timeliness habeas rule did "not set forth an inflexible rule requiring dismissal whenever its clock has run." *Id.* at 645 (internal quotations omitted); *see also Harrow v. Dep't of Def.*, 601 U.S. 480, 489 (2024) (embracing presumption for statute governing judicial review of Merit Systems Protection Board); *Boechler, P.C. v. Comm'r of Internal Revenue*, 596 U.S. 199, 209 (2022) (tax court review of IRS decision).

And on a broader reach, the Supreme Court has raised doubts as to the continued viability of unremitting cases such as *Frias*. Thus, in *Hamer v. Neighborhood Hous. Servs. of Chi.*, it specifically "reserved whether mandatory claim-processing rules may be subject to equitable exceptions." 583 U.S. 17, 20 n.3 (2017).

The Supreme Court grappled with that unresolved issue in *Nutraceutical Corporation v. Lambert*, 586 U.S. 188 (2019). The Court noted that "[t]hough subject to waiver and forfeiture, some claim-processing rules are mandatory—that is, they are unalterable if properly raised by an opposing party." *Id.* at 192 (internal quotations omitted). As such, "[r]ules in this mandatory camp are not susceptible" to equitable tolling or "harmless error analysis." *Id.* But the Court, distancing itself from its prior unqualified language which was the basis for the Second Circuit's immutable holding in *Frias,* wrote that "the simple fact that a deadline is phrased in an unqualified manner does not necessarily establish that tolling is unavailable." *Id.* at 193. Thus, "[w]hether a rule precludes equitable tolling turns not on its jurisdictional character but rather on whether the text of the rule leaves room for such flexibility." *Id.*

In *Nutraceutical*, the Court ruled that the civil claim-processing rule in that case, Federal Rule of Civil Procedure 23(f)—authorizing courts of appeals to "permit an appeal from an order granting or denying class-action certification . . . if a petition for permission to appeal is filed . . . within 14 days after the order is entered"—expressed a "clear intent" to compel rigorous enforcement of that rule, and it was not, therefore, subject to equitable tolling or harmless error analysis. *Id.* at 191–93.

The Second Circuit recently had the opportunity to apply this standard to another rule that governs civil matters, namely whether Appellate Rule 4(a)(4)(A), requiring a post-judgment motion to be filed "within the time allowed by [the Federal Rules of Civil Procedure]," was "a mandatory claim-processing rule subject to waiver and forfeiture, but not subject to equitable tolling or harmless error analysis." *Malek v. Feigenbaum,* 116 F.4th 118, 124–26 (2d Cir. 2024). Like the Supreme Court in *Nutraceutical*, the circuit court held, although cursorily, that this civil rule also manifested a "clear intent" to preclude tolling. *Id.* at 126–27.

But the Supreme Court in *Nutraceutical* identified yet other unresolved issues for ultimate resolution even if the rule under consideration did not pass the "clear intent" hurdle: (1) whether a motion would be timely if the District Court had "misled [the appellant] about the appeal filing deadline," and (2) "whether an insurmountable impediment to filing timely might compel a different result." 586 U.S. at 197 n.7.[1]

## III

Neither the Second Circuit nor any district court within the circuit has yet to decide whether criminal Rule 4(b)(1)—which, like the civil rules in *Nutraceutical*

---

[1] Shortly thereafter, the Supreme Court reiterated the viability of the second unresolved issue in *Fort Bend Cnty. v. Davis*, 587 U.S. 541, 549 n.5 (2019) ("The Court has 'reserved whether mandatory claim-processing rules may [ever] be subject to equitable exceptions.'" (quoting *Hamer*, 583 U.S. at 18 n.3)). Notably, the Second Circuit reserved that same question in *Malek*. 116 F.4th at 127 n.8 ("To the extent that *Nutraceutical* permits even mandatory rules to remain subject to limited equitable exceptions *in extremis*, we do not foreclose such possibilities.").

and *Malek*, is a court-created claim-processing rule subject to forfeiture and waiver—also may preclude equitable tolling or harmless error analysis. Nor has it addressed any of the unresolved issues reserved in *Frias* and *Nutraceutical*. But one circuit court has.

Shortly after *Nutraceutical,* the Fourth Circuit, in a divided opinion, ruled "that 4(b) is a mandatory claim-processing rule" not subject to equitable tolling. *United States v. Marsh*, 944 F.3d 524, 530 (4th Cir. 2019). There, the precise issue was whether the district court's failure to inform the defendant at sentencing of the defendant's right to appeal could excuse the late filing of the notice of appeal. Strictly applying *Nutraceutical*, the majority concluded that 4(b)(1) reflected a clear intent to preclude equitable tolling— drawing no distinction between a civil rule, as in *Nutraceutical*, and the 4(b)(1) criminal rule, "even in cases where a litigant may have been reasonably mistaken, or otherwise deserving." *Id.* at 531 (internal quotations omitted). It then addressed the two questions left open in *Nutraceutical,* ruling (1) that the failure to meet the deadline was inexcusable because it was not due to an erroneous ruling or assurance by the District Court, and (2) that the unique circumstances exception was not applicable because "at a minimum, it requires some *affirmative* statement by the district court—later proved incorrect—that a filing will be timely." *Id*. at 532–33.

9

Chief Judge Gregory disagreed as to both holdings. He prefaced his reasons by first invoking the Supreme Court's decision in *Holland* that Rule 4(b)(1) "does not set forth an inflexible rule requiring dismissal whenever its clock has run . . . [and] non-jurisdictional rules are normally subject to a rebuttable presumption in favor of equitable tolling." *Id.* at 536–37 (cleaned up) (quoting *Holland*, 560 U.S. at 645–46). He then took issue with the majority's conclusion "that something about [Rule 4(b)(1)'s] nature precludes tolling." *Id.* at 538. He first quoted the broad language in *United States v. Kwai Fun Wong* that "a nonjurisdictional deadline does not preclude a court from hearing a case 'even when the time limit is important (in most cases) and even when it is framed in mandatory terms (again, most are); indeed, that is so however emphatic[ally] expressed those terms may be.'" *Id.* at 537 (quoting 575 U.S. 402, 410 (2015)). He then referenced the language in *Holmberg v. Armbrecht*, 327 U.S. 392, 396 (1946), articulating the basic equitable principle that "'[e]quity eschews mechanical rules; it depends on flexibility,'" and Fourth Circuit precedent requiring a court "'to consider the facts and circumstances of a particular case.'" *Id.* (quoting *Rouse v. Lee*, 339 F.3d 238, 260 (4th Cir. 2003)).

Chief Judge Gregory concluded: "The upshot of all of this is that, contrary to the majority's portrayal, there is nothing about the 'nature' of a mandatory claim-processing rule that definitively precludes equitable tolling. Far from it. 'Equitable

10

tolling is appropriate in those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Id.* (quoting *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 549 (4th Cir. 2019)). Thus, he would have remanded for the district court to determine whether the facts presented "one of those rare instances where injustice would result." *Id.*

Chief Judge Gregory did not stop there. He explained why the majority's reliance on *Nutraceutical*'s *"*clear intent" holding was misplaced. He correctly pointed out that the civil rule in that case governed interlocutory appeals in class action litigation, explaining that "a litigant who loses the opportunity to appeal a final judgment forever loses the ability to appeal, but a litigant who loses the opportunity to file an interlocutory appeal has another chance later." *Id.* (internal quotations omitted). Thus, "[s]ince interlocutory appeals are exceptional, there is no surprise that their limitations are purposefully unforgiving." *Id.* (internal quotations omitted).

Poignantly, Chief Judge Gregory contrasted the rigidity of filing deadlines for interlocutory appeals with the appeals in criminal cases "where the gravity of the stakes are much higher." *Id.* at 540 (internal quotations omitted). He then explained his disagreement with the majority's rejection of the "unique circumstances" exception and its restrictive pronouncement that it requires an

11

"affirmative" wrongdoing, writing it is "illogical and frustrates the wisdom behind the doctrine." *Id.* Thus, he would "apply the unique circumstances doctrine in situations where a court 'misled a party who could have—and probably would have—taken timely action had the trial judge conveyed correct' information about the party's right to appeal." *Id.* (quoting *Carlisle v. U.S.*, 517 U.S. 416, 435 (1996) (Ginsburg, J., concurring)). And he recognized that the doctrine could have broader application. Noting that "the Supreme Court has not precisely outlined the contours of the unique circumstances exception," *id.* at 541, he explained that various circuits have interpreted it "widely," applying it, for example, in cases where a PACER system's docket sheet failed to show the entry of a final judgment and where the court implicitly represented that a notice of appeal could be filed late. *Id.* (collecting cases).

## IV

How then should the present case be resolved? Even if the "clear intent" standard is applicable in criminal cases, as well as civil cases, there is a view that supports the conclusion that 4(b)(1) does not satisfy that restrictive standard to preclude tolling.

A critical difference exists between criminal Rule 4(b) and the rules at issue in *Nutraceutical* and *Malek*. Pursuant to Rule 4(b)(4), the time to take an appeal under 4(b)(1) can be extended for thirty days for good cause. By contrast, the

12

deadlines in Civil Rule 23(f), at-issue in *Nutraceutical*, and Appellate Rule 4(a)(4)(A)(iv) governing civil appeals in *Malek*, can never be extended under any circumstance. *See Nutraceutical*, 586 U.S. at 193 ("Appellate Rule 26(b) says that the deadline for the precise type of filing at issue here may not be extended. The Rules thus express a clear intent to compel rigorous enforcement of Rule 23(f)'s deadline . . . ."); *Malek*, 116 F.4th at 126–27 (holding that Appellate Rule 4(a)(4)(A)(iv) cannot be tolled because no rule permits appellant to extend time to file). That cannot be said for 4(b), which does contain a provision allowing for an extension. *Nutraceutical*'s and *Malek*'s rationale are not apt precedent, therefore, for the rigid application of 4(b)(1). The immutable nature of the civil rules in those cases is the rationale for the courts' decisions. Criminal Rule 4(b) is not saddled with the same proscriptions.

But there is a more fundamental reason why Rule 4(b)(1) should not be construed to express a clear intent to preclude equitable tolling. The Supreme Court has repeatedly prescinded between criminal rules and civil rules since "the stakes are higher in criminal cases, where liberty or even life may be at stake, and where the government's sole interest is to convict." *Mitchell v. United States*, 526 U.S. 314, 328 (1999) (internal quotations omitted); *see also Santosky v. Kramer*, 455 U.S. 745, 755 (1982); *In re Winship*, 397 U.S. 358, 363–64 (1970). As *Santosky* explains: "The stringency of the beyond a reasonable doubt standard

13

bespeaks the weight and gravity of the private interests affected [in a criminal matter], society's interest in avoiding erroneous convictions, and a judgment that those interests together require that society impose almost the entire risk of error upon itself." 455 U.S. at 755 (cleaned up).

As Justice Black has presciently explained, "the Criminal Rules are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances." *Santana v. United States*, 385 U.S. 848, 849–50 (Black, J., dissenting) (cleaned up); *see, e.g.*, *Morris v. Florida*, 393 U.S. 850, 850 (1968) (Black, J., dissenting) (collecting cases). Thus, for example, the Court has acknowledged that it has "treated the rule-based time limit for [filing a writ of certiorari in] criminal cases differently [from that for civil cases]." *Bowles*, 551 U.S. at 212 (internal quotations omitted).

The bottom line, in my opinion, therefore, is that Rule 4(b)(1) was never intended to preclude equitable tolling. To hold otherwise would simply be anathema to fundamental concepts of justice. In any event, I also believe that the "unique circumstances" doctrine should apply in this case, and that the rigid view that it can only apply to *affirmative* misrepresentations by the government is misplaced. Claim-processing procedural rules should be relaxed by the Court "in the exercise of its discretion when the ends of justice so require." *Schacht v. United*

14

*States*, 398 U.S. 58, 64 (1970). This basic equitable principle is particularly apt when a person's liberty is at stake.

The fault in this case lies squarely at the foot of the government. Factually, this is a perfect case for the application of equitable tolling. The petitioner brought his motion within days after learning of my decision denying his compassionate release motion, and even filed his notice of appeal shortly after. And not to be forgotten is the petitioner's *pro se* status. *See United States v. Montoya*, 335 F.3d 73, 75 (2d Cir. 2003) ("[U]nlike other litigants, a *pro se* prisoner cannot personally ensure that his notice of appeal is filed in a timely manner[.]" (citing *Houston v. Lack*, 487 U.S. 266, 270 –71 (1988))); *also Clark v. CFTC*, 126 F.3d 424, 426 (2d Cir. 1997) ("overlook[ing] a lack of formal compliance with the procedure for petitioning for review of an [agency] order" where *pro se* petitioner was incorrectly advised of time to appeal and filed petition shortly after statutory deadline (citing *Haltmier v. CFTC*, 554 F.2d 556, 559 n.1 (2d Cir. 1977)).

## CONCLUSION

The petition for an extension to file the notice of appeal is granted. The Court sees no reason for petitioner to file another notice of appeal and will deem

the appeal to have been timely filed.[2] The Clerk of the Court is directed to ensure that petitioner promptly receives the Court's decision.

**SO ORDERED.**

      /S/ Frederic Block_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
December 18, 2024

---

[2] Since the circuit court must make its own independent jurisdictional determination and cannot simply affirm the district court's determination, *see Marquez*, 96 F.4th at 582, I recognize that it has a number of options that could obviate the need to address all the unresolved issues which I have addressed. Thus, it could arguably accept jurisdiction simply because of the government's waiver and forfeiture, as in *Frias.* If so, the court should consider resolving the question reserved in *Frias* as to whether it has the discretion to nonetheless dismiss the appeal. Or it could go further and resolve the overriding open question as to whether Rule 4(b)(1) is always subject to equitable tolling, as well as the unresolved questions raised in *Nutraceutical*. Hopefully my decision would be of some value to the court if it chooses to address those issues.